## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
ADMIRAL INSURANCE COMPANY,

                 Plaintiff,

      -against-

TBN LABS, LLC, TOTAL BODY NUTRITION, LLC
and BRANDON COPELAND,

                 Defendants.
-----------------------------------------------------------------------X

Case No.:

(Plaintiff Demands Trial By Jury As To All Issues So Triable)

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, ADMIRAL INSURANCE COMPANY ("ADMIRAL"), by its attorneys, Litchfield Cavo LLP, complaining of the Defendants, TBN LABS, LLC ("TBN"), TOTAL BODY NUTRITION, LLC, and BRANDON COPELAND ("COPELAND"), alleges as follows:

### NATURE OF THIS ACTION

1.      This is an action for declaratory relief/judgment, pursuant to 28 U.S.C. § 2201, *et. seq.*

2.      In this action, ADMIRAL seeks a declaration that an insurance policy it issued to TBN as specified below does not require ADMIRAL to provide a defense or indemnification to TBN, TOTAL BODY NUTRITION, LLC, or any allegedly related entities, in connection with a certain action pending in the United States District Court for the District of New Jersey.

3.      Defendant COPELAND is a nominal party named as a defendant because of his potential interest in the relief sought by Plaintiff vis-à-vis Defendants TBN and TOTAL BODY NUTRITION, LLC.

## THE PARTIES

4.      At all relevant times, Plaintiff ADMIRAL was and is an excess and surplus lines insurer organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at 7233 E. Butherus Drive, Scottsdale, AZ 85260.

5.      At all relevant times, Defendant TBN was and is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 300 Oser Avenue, Hauppauge, NY 11788.

6.      At all relevant times, Defendant TOTAL BODY NUTRITION, LLC, was and is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 11 Meade Avenue, Bethpage, NY 11714.

7.      At all relevant times, Defendant COPELAND was and is an individual residing in the Township of Old Bridge, County of Middlesex, State of New Jersey.

## JURISDICTION AND VENUE

8.      ADMIRAL, on the one hand, and TBN, TOTAL BODY NUTRITION, LLC, and COPELAND, on the other hand, are citizens of different states.

9.      ADMIRAL issued the subject policy to its New York-based insured, TBN, in this District. Documentation relating to the subject policy is presently located in TBN's offices located in this District and witnesses with first-hand knowledge of relevant facts concerning the procurement and issuance of the policy are located in this District.

10.     The amount in controversy exceeds $75,000 exclusive of costs and interest.

11.     Diversity jurisdiction in this Court, therefore, is proper under 28 U.S.C. § 1332 (a) (1) in that ADMIRAL, on the one hand, and TBN, TOTAL BODY NUTRITION, LLC and COPELAND, on the other hand, are citizens of different states, and the amount in controversy exceeds $75,000.

2

12.     Venue is also proper in this Court under 28 U.S.C. § 1391 because TBN and TOTAL

BODY NUTRITION, LLC, reside in this District, and a substantial part of the events giving rise to

ADMIRAL's claims for relief occurred in this District.

## THE UNDERLYING ACTION

13.     On or about October 11, 2019, COPELAND commenced a civil action against various

defendants in the Superior Court of New Jersey, Middlesex County.  That action was subsequently

removed to the United States District Court for the District of New Jersey, under case number 3:19-cv-

20278 (the "Underlying Action"), wherein a Third Amended Complaint ("TAC") has now been filed

naming as defendants, among others, "TOTAL BODY NUTRITION LLC" and "WE DO PRIVATE

LABEL, LLC".

14.     COPELAND alleges in his TAC that TOTAL BODY NUTRITION LLC is "doing

business as TBN Labs LLC".  As reflected in the records of the New York Secretary of State, however,

"TBN Labs LLC" and "TOTAL BODY NUTRITION LLC" are separate and distinct legal entities .

COPELAND further maintains that "TOTAL BODY NUTRITION LLC doing business as TBN Labs

LLC" "is an owner, agent, affiliate or otherwise related entity to" WE DO PRIVATE LABEL LLC,

which COPELAND characterizes, upon information and belief, as a New York limited liability

company.

15.     ADMIRAL understands that it is TBN's belief that COPELAND intended to sue TOTAL

BODY NUTRITION, LLC, and/or TBN when he named We Do Private Label, LLC, a name used by

TBN on its website, but not a separate legal entity, as a defendant.

16.     The Underlying Action concerns a product named Yang R-ALA.

17.     COPELAND's TAC alleges, in pertinent part:

- "Plaintiff brings this action to redress Defendants' fraudulent, deceptive, and
  misleading labeling, advertising and sale of 'Yang R-ALA'". (¶ 1)

3

- "Defendants promoted and actually sold Yang R-ALA as a purported high-quality dietary supplement, and represented that it contained the ingredients listed on the product bottle and website descriptions." (¶ 1)

- "In truth, Defendants' Yang R-ALA contained Ostarine, a Selective Androgen Receptor Modulator (SARM), which is a dangerous and prohibited performance-enhancing substance ('PES')". (¶ 1)

- "Defendants did not disclose Ostarine as an ingredient of Yang R-ALA, and Defendants' product label and website advertisements represented that Yang R-ALA was legal and contained only the ingredients listed on its bottle." (¶ 1)

- "Plaintiff is a professional athlete who is employed by the New York Jets" of the National Football League. The NFL prohibits the use of PES's. "Plaintiff consumed Defendants' Yang R-ALA as a result of Defendants' fraudulent, deceptive, and misleading representations that Yang R-ALA was a safe dietary supplement comprised of legal ingredients, and Defendants' fraudulent, negligent or grossly negligent conduct caused Plaintiff to unknowingly consume Ostarine, and consequently suffer significant and ascertainable on-field and off-field monetary losses when a routine NFL PES test revealed Ostarine in Plaintiff's system." (¶ 2)

- "Plaintiff's losses include, but are not limited to, monetary losses following official NFL suspension, the triggering of adverse employment contract provisions for violation of the NFL's policy prohibiting" PES's, "which explicitly bans Ostarine and other SARMs, and loss of reputation and reputation-based endorsements and deals." (¶ 2)

- "Defendants market, advertise, distribute, and sell Yang R-ALA throughout the United States . . . " (¶ 14)

- "Ostarine is not legal or approved for human consumption in the United States, or any other country." (¶ 18)

- "In addition to being illegal for sale, SARMs are also expressly prohibited by the World Anti-Doping Agency and every reputable athletic association, including the" NFL. (¶ 19)

- Plaintiff relied on the representations of Defendants, and each of them, on the label of the Yang R-ALA bottle and website description that Yang R-ALA did not contain Ostarine." (¶ 21)

- "On March 28, 2019, Plaintiff received two bottles of Yang R-ALA." (¶ 24)

- "On April 1, 2019, Plaintiff began consuming Yang R-ALA." (¶ 25)

- As an NFL player, Plaintiff was subject to regular drug testing by the NFL, and provided urine samples to the NFL on April 15, 2019. (¶ 26) On May 18, 2019 the NFL notified him that he had failed the PES test due to the confirmed presence of Ostarine. (¶ 30) Plaintiff immediately ceased consumption of Yang R-ALA. (¶ 30)

- Plaintiff's remaining Yang R-ALA capsules were tested by a laboratory, which reported that the capsules provided were conclusively positive for Ostarine. (¶ 32)

- "On July 9, 2019, the laboratory was directed to purchase a sealed bottle of Yang R-ALA directly from Defendants", which it did. (¶ 33)

- On August 6, 2019, the laboratory reported that it found that ten out of ten, or 100%, of the Yang R-ALA capsules tested were conclusively positive for Ostarine. (¶ 34)

- On August 21, 2019, an NFL spokesman announced that Plaintiff had been suspended without pay for the first four games of the 2019 regular season for violating the NFL policy on performance-enhancing substances. (¶ 36)

- As a result of testing positive for a banned substance, Plaintiff was subjected to discipline by the NFL including being suspended by the NFL for the first four games of the 2019 season; advancement to an elevated disciplinary status under NFL Policy until 2021; and forfeiture of any Forfeitable Salary allocations on a proportionate weekly basis. (¶ 44) He was also forced to pay for his own training out of pocket during his suspension as he was not permitted to train with the team during that time or use their facilities. (¶¶ 44-45, 50) He also incurred significant legal expense, was immediately ineligible for player incentives and bonuses, was precluded from fulfilling contract incentives, and lost significant contributions to his retirement and other savings and financial benefits. (¶¶ 46-48)

- "Following the news of Plaintiff's suspension for violation for ingestion of Ostarine, the Plaintiff's character and integrity have been called into question." (¶ 51) "Plaintiff had historically generated significant personal income through speaking engagements and endorsements, and has lost, and will continue to lose, these opportunities as a result of taking Yang R-ALA containing Ostarine." (¶ 51)

- "Plaintiff has suffered, is suffering, and will continue to suffer financially as a result of Defendants' fraudulent and/or grossly negligent conduct alleged herein." (¶ 53)

A copy of COPELAND's TAC is attached hereto as Exhibit "A".

18.     The TAC alleges eight Counts against the Defendants.  Count I of the TAC is titled

"UNCONSCIONABLE COMMERICAL PRACTICES Violation of New Jersey Consumer Fraud Act

by Defendants". Count I alleges that "Defendants have engaged in unconscionable commercial practices including, but not limited to, the following":

> Offering for sale and selling: a) a product that contained ingredients that are illegal in the United States, and presenting them to the public as legal food products for purchase; b) a product that contained ingredients that are harmful, toxic, or highly toxic and presenting them as a safe dietary supplement; c) food products that are mislabeled;

> Marketing, advertising, promotion, distribution, or sale of food products: a) that contain ingredients that an ordinary consumer would not expect them to contain; and b) without properly testing or verifying their contents. (¶ 64)

Count I goes on to allege that "Defendants are jointly and severally liable to Plaintiff for trebled compensatory damages, including but not limited to payment of . . . treble the monetary loss suffered by Plaintiff" including ascertainable loss of on-field and off-field income, personal expense, loss of endorsement deals and diminished brand value due to injury to reputation, due to "Defendants' marketing, advertising, promotion, distribution, or sale of Yang R-ALA, plus reasonable attorneys' fees, filing fees, and reasonable costs of suit." (¶ 67)

19. Count II of the TAC is titled "DECEPTION, FALSE PROMISES, MISREPRESENTATIONS AND KNOWING OMISSIONS OF MATERIAL FACT Violation of New Jersey Consumer Fraud Act by Defendants". As to the defendants other than TOTAL BODY NUTRITION, LLC and WE DO PRIVATE LABEL LLC, Count II alleges that Defendants' "conduct in violation of the Consumer Fraud Act includes, but is not limited to, the following acts of deception, false promises and/or misrepresentations":

> Defendants' representations that: a) "'Unlike other brands, what it says on the label  is exactly what you get!"; b) "'We understand how important it is to know what you  are putting into your body, and that is why in addition to our safety testing, our product is also tested for label claim potency.'"; c) "PoliquinTM products are independently lab tested after manufacturing to ensure label claim."; (¶ 70(a) – 70(c)) and others (¶ 70(d) – 70(n))

As to Defendants WE DO PRIVATE LABEL LLC, and TOTAL BODY NUTRITION, LLC, Count II alleges that Defendants conduct in violation of the Consumer Fraud Act includes, but is not limited to, the following acts of deception, false promises and/or misrepresentations:

> Defendants' representations that, "We carry out quality checks throughout various stages of the manufacturing process, to ensure that the quality of your products remain consistent batch after batch"; b) Defendants' representations that, "All labels created by our team, are checked to ensure FDA and cGMP compliance so you can feel confident that your product meets all of the requirements set forth by the FDA. We also offer Supplement Fact Creation services"; and c) Defendants' representations that, "Our employees are just as dedicated as we are to delivering quality which is why every product goes through a thorough inspection process before it is packed and shipped off. We make sure that expired, unsealed, and/or contaminated products are never sent to the customer." (¶ 71(a)-71(c))

As to all Defendants Count II alleges that "Defendants' conduct in violation of the Consumer Fraud Act includes, but is not limited to, the following knowing omissions of material fact":

> That Defendants' Yang R-ALA: a) contained Ostarine, a known SARM; b) contained non-FDA approved ingredients; c) was not legal for sale as a 'dietary supplement,' or was not compliant with that term in any respect; and d) was comprised of dangerous substances; (¶ 72 (a) – 72(d)); e) that "Defendants' sale of Yang R-ALA was illegal per Federal and New Jersey law because it contained Ostarine"; f) that Defendants' Yang R-ALA "contained ingredients other than those listed on its bottle"; and g) that "Defendants did not actually implement the quality assurance measures promised on their websites and advertisements, or only did so in a negligent or grossly negligent manner so as to render those claims meaningless." (¶ 72(e) – 72(g))

Count II goes on to allege that "Defendants have engaged in practices that are unconscionable, deceptive, and fraudulent and based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material fact with the intent that others rely on such concealment, suppression, or omission in their manufacturing, advertising, marketing, selling, and distribution of Yang R-ALA." (¶ 75) It further alleges that "Plaintiff purchased Yang R-ALA for use

and suffered ascertainable losses of money", including losses similar to those described in Count I above. (¶ 76) The damages sought in Count II are similar to those sought in Count I discussed above. (¶ 80)

20.     Count III of the TAC is titled "STRICT LIABIITY – MISBRANDED FOOD AND HAZARDOUS SUBSTANCE Violation of New Jersey Consumer Fraud Act by Defendants." Count III alleges that "Defendants have violated N.J.S.A. 56:8-2.10, which makes it unlawful to falsely or misleadingly describe food or food products, or to omit information which by its omission renders the description of a food or food product false or misleading." (¶ 85) It further alleges that "Defendants have violated" certain New Jersey statutes "because Yang R-ALA contains Ostarine without labeling stating that fact". (¶ 89-90) It goes on to allege that "Defendants' conduct constitutes multiple violations of the food labeling laws of New Jersey, each of which constitutes a per se violation of the New Jersey Consumer Fraud Act." (¶ 95) The damages sought in Count III are similar to those sought in Count I discussed above. (¶ 96)

21.     Count IV of the TAC is titled "Breach of Warranty". Count IV alleges that "Defendants breached express warranties regarding Yang R-ALA's contents made in their labeling and advertising of Yang R-ALA, including the express warranties that Defendants [other than TOTAL BODY NUTRITION LLC, and WE DO PRIVATE LABEL LLC] made on the . . . product label, and in . . . advertisements . . . .as specifically, but not exhaustively reproduced in Paragraph 70" [Count II] and, as to TOTAL BODY NUTRITION LLC, and WE DO PRIVATE LABEL LLC in "Paragraph 71" [Count II].   (¶ 98) It further alleges that "Defendants similarly breached express and implied warranties regarding the safety of Yang R-ALA because it contained undisclosed, toxic ingredients." (¶ 102) It also alleges that "Defendants similarly breached express and implied warranties of merchantability and fitness for a particular purpose." (¶ 103)

22.     Count IV alleges that "Defendants are jointly and severally liable to Plaintiff for the damages incurred as a result of Defendants' actions, including but not necessarily limited to the monetary loss suffered by Plaintiff", including ascertainable loss of on-field and off-field income, personal expense, and loss to his reputation and personal brand. (¶ 108) Count IV further alleges that "Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to the well-being of Plaintiff. Defendants are therefore additionally liable for punitive damages . . . ." (¶ 109)

23.     Count V of the TAC is titled "Common Law Fraud". It alleges that "Defendants fraudulently engaged in acts of deception, false promises and/or misrepresentations as specifically asserted, but not limited to, those contained in Paragraph 70" [Count II] as to the Defendants other than TOTAL BODY NUTRITION LLC and WE DO PRIVATE LABEL LLC "and Paragraph 71" [Count II] as to TOTAL BODY NUTRITION LLC and WE DO PRIVATE LABEL LLC and "secretly caused Yang R-ALA to be laced with a performance-enhancing SARM (Ostarine) unbeknownst to consumers . . . " (¶ 111) It further alleges that Defendants knowingly omitted material facts, the same or similar to those discussed in ¶ 19 above, and that "Defendants acts and omissions constitute fraud". (¶¶ 112, 115) It further alleges that these "affirmative representations were false when made, and defendants knew or were reckless in not knowing that they were false." (¶ 117) Count V alleges damages similar to those discussed above in Count IV. (¶¶ 116, 120)

24.     Count VI of the TAC is titled "Common Law Civil Conspiracy". Count VI alleges that "Defendants fraudulently conspired to market, advertise, distribute, and sell Yang R-ALA to consumers to improve athletic performance, while Defendants had secretly caused Yang R-ALA to be laced with an illegal performance-enhancing SARM (Ostarine) unbeknownst to Plaintiff." (¶ 123) Count VI alleges that "[a]s a result of Defendants' improper actions and misconduct, Plaintiff sustained the damages

alleged herein." (¶ 124) It goes on to allege that "Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to the well-being of Plaintiff" and "Defendants are therefore additionally liable for punitive damages . . . " (¶ 125)

25.     Count VII of the TAC is titled "Negligence". Count VII alleges that "Defendants had a duty to maintain proper control over the ingredients in and manufacture of their product Yang R-ALA" and "to ensure the accuracy of their product's label and that the ingredients contained in their product were safe, legal and accurately disclosed." (¶ 129) It goes on to allege that "Defendants breached their duty of care as the Defendants' Yang R-ALA consumed by the Plaintiff contained illegal and undisclosed Ostarine." (¶ 130) It further alleges "Defendants' conduct was in blatant disregard of, or grossly negligent and reckless with respect to the well-being of Plaintiff" and "Defendants are therefore additionally liable for punitive damages . . . ." (¶¶ 131-132)

26.     Count VIII of the TAC is titled "Respondeat Superior". Count VIII alleges that "[t]he individual defendants were agents, employees, and/or servants of the non-individual defendants" and "[a]s a result, the non-individual defendants are responsible for the improper actions and conduct of their agents, employees, and/or servants who are individual defendants under the doctrine of vicarious liability." (¶ 136)

## THE ADMIRAL POLICY

27.     ADMIRAL issued policy No. CA000027930-05 to TBN Labs, LLC, 300 Oser Avenue, Hauppauge, NY 11788, with effective dates of August 14, 2021 to August 14, 2022 (hereinafter the "ADMIRAL Policy")  The Policy provides Commercial General Liability Coverage ("CGL Coverage") with limits of $1M per occurrence, with a $2M General Aggregate Limit and a $2M Products-Completed Operations Aggregate Limit. A copy of the ADMIRAL Policy is attached hereto as Exhibit "B".

28.  The CGL Insuring Agreement in the ADMIRAL Policy provides, in pertinent part:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

Section b.(1) of this Insuring Agreement requires, among other things, that the "bodily injury" or "property damage" be caused by an "occurrence". Section b.(3) of this Insuring Agreement requires, in relevant part, that a claim for damages because of the "bodily injury" or "property damage" be "first made against any insured" "during the policy period or any Extended Reporting Period . . ." Section c. of this Insuring Agreement provides, in pertinent part, that "[a] claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times: (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or (2) When we make settlement in accordance with Paragraph a. above." Section c. of this Insuring Agreement further provides that:

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

29.  The Insuring Agreement of the CGL portion of the Policy also provides, in relevant part, the following with respect to Personal and Advertising Injury:

SECTION I - COVERAGES

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

11

1.      Insuring Agreement

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . .

Section b.(3) of this Insuring Agreement requires, in relevant part, that a claim for damages because of the "personal and advertising injury" be "first made against any insured" "during the policy period or any Extended Reporting Period . . ." Section c. of this Insuring Agreement provides, in pertinent part, that "[a] claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times: (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first; or (2) When we make settlement in accordance with Paragraph a. above." Section c. of this Insuring Agreement further provides that:

All claims for damages because of "personal and advertising injury" to the same person, including damages claimed by any person or organization as a result of an offense will be deemed to have been made at the time the first of those claims is made against any insured.

30.     Coverage A includes, among others, Exclusion **a.**, which states that the Policy does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Coverage B includes, among others, Exclusion **a.**, which states that the Policy does not apply to:

**a.      Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

12

31.     Section VI. of the CGL portion of the ADMIRAL Policy includes certain Definitions, including but not limited to, in pertinent part, the following:

As amended by Endorsement AD 08 42 02 16 of the Policy, the term "bodily injury" is defined as follows:

"Bodily injury" means physical injury, physical sickness or physical disease sustained by any one person, including death resulting from any of these at any time. "Bodily injury" does not include shock or emotional, mental or psychological distress, injury, trauma or anguish, or other similar condition, unless such condition results solely and directly from that one person's prior physical injury, physical sickness or physical disease otherwise covered under this insurance.

32.     Additional definitions found within Section VI of the Policy include the following:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.      False arrest, detention or imprisonment;

b.      Malicious prosecution;

c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.      Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.      The use of another's advertising idea in your "advertisement"; or

g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

* * *

"Property damage" means:
Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

33. Endorsement AD 66 01 07 15 of the Policy, entitled "Punitive Damages Exclusion", states as follows:

This insurance does not apply to punitive or exemplary damages, in whatever form assessed, awarded against any insured.

34. Endorsement NR 00 02 11 19 to the Policy contains a Designated Products, Supplements, and Additives Exclusion which states, in pertinent part, as follows:

This insurance does not apply to liability, injury or damages of any kind, to include but not limited to "bodily injury" and "property damage", including costs or expenses, actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with the manufacturing, distribution, sale, disposal, testing, handling, application, consumption or use of, or exposure to, any of the products, supplements or additives listed in the Schedule below, or to any other products which contain any of the products, supplements or additives listed in the Schedule below, or to any products which contain products similar to the chemical formulary of the products, supplements or additives listed in the Schedule below, or to any product which is a derivative of a product, supplement or additive listed in the Schedule below, or to any product, supplement or additive which is generally known in the trade in which it is used as having a formulation, structure or function similar to those listed in the Schedule below, by whatever name manufactured, distributed or sold.

14

**SCHEDULE**

Any product, supplement, additive, substance, ingredient or compound manufactured, imported, formulated, sold or distributed by you or on your behalf by others, in violation of any regulation or law. . .

We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging injury or damage of any kind, including but not limited to "bodily injury", "property damage" or "personal and advertising injury" to which this amendment applies.

**ADMIRAL'S COVERAGE POSITION**

35.     On June 27, 2022, in response to a request for coverage by TBN, ADMIRAL disclaimed

coverage for TBN in connection with the Underlying Action on the following grounds:

Subject to its terms and conditions, Coverage A of the CGL Portion of the ADMIRAL Policy only covers claims for damages because of "bodily injury" or "property damage", as those terms are defined in the Policy. The Second Amended Complaint does not allege damages because of "bodily injury" or "property damage", and therefore there is no coverage pursuant to Coverage A of the CGL Portion of the Policy;

To the extent that the Second Amended Complaint did allege such damages, such damages are not alleged to be caused by an "occurrence", as required by the Policy and as that term is defined in the Policy;

To the extent that the Second Amended Complaint did allege such damages, such alleged damages in the Second Amended Complaint would be excluded due to Exclusion a. of Coverage A, which excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured;

Subject to its terms and conditions, Coverage B of the CGL Portion of the ADMIRAL Policy only covers claims for damages because of "personal and advertising injury", as that term is defined in the Policy. The Second Amended Complaint does not allege damages because of "personal and advertising injury", and therefore there is no coverage pursuant to Coverage B of the CGL Portion of the Policy;

To the extent that the Second Amended Complaint did allege such damages, such alleged damages in the Second Amended Complaint would

be excluded pursuant to Exclusion a. of Coverage B, which excludes coverage for the knowing violation of the rights of another;

Coverage is excluded pursuant to the Designated Products, Supplements and Additives Exclusion, set forth in Endorsement NR 00 02 11 19; and/or

Punitive or exemplary damages are excluded pursuant to Endorsement AD 66 01 07 15 of the Policy.

36.     Admiral maintains, with respect to the Third Amended Complaint now filed in the Underlying Action, the same coverage position as set forth immediately above with respect to the Second Amended Complaint in the Underlying Action.

37.     In more recent communications between ADMIRAL and TBN, it appears that TBN may also be seeking coverage for Total Body Nutrition LLC.   To the extent that this may be the case, ADMIRAL has further denied coverage on the ground that Total Body Nutrition LLC is not an insured under the ADMIRAL Policy, in addition to the grounds set forth above.

## FIRST CAUSE OF ACTION

38.     Plaintiff repeats each and every allegation contained in the Paragraphs of the Complaint designated "1" through "37" as though set forth herein in their entirety.

39.     TBN contests that there is no coverage on the bases cited by ADMIRAL.

40.     Accordingly, an actual and justiciable controversy exists between ADMIRAL and TBN as to coverage under the ADMIRAL Policy and, more specifically, as to the obligation of ADMIRAL to defend and indemnify TBN, and any other allegedly affiliated insured, under the ADMIRAL Policy in connection with the Underlying Action.

41.     A Judicial Declaration, therefore, is necessary and appropriate at this time, in order that ADMIRAL may ascertain its rights and obligations and fulfill only such duties as it may have, if any, to TBN under the ADMIRAL Policy in connection with the Underlying Action.

42.    ADMIRAL will be prejudiced without a Declaration from this Court concerning its rights and obligations under the ADMIRAL Policy.

WHEREFORE, Plaintiff, ADMIRAL INSURANCE COMPANY, prays that the Court declare and adjudge that it is not obligated to provide coverage for, or to defend or indemnify, TBN, or any other insured for which TBN may be seeking coverage in connection with the Underlying Action, on one or more of the grounds asserted by ADMIRAL in its disclaimers to TBN and that the Court award such other and further relief as it may deem just and appropriate in law or equity.

Dated: New York, New York

September __, 2022

LITCHFIELD CAVO LLP

By: _____

JOSEPH E. BOURY
420 Lexington Avenue, Suite 2104
New York, New York 10170
(212) 434-0100

Patrick J. Sullivan
Litchfield Cavo LLP
303 W. Madison
Suite 300
Chicago, IL 60606
(312) 781-6677

*Attorneys for Plaintiff*
*ADMIRAL INSURANCE COMPANY*